CURETON vs. WRIGHT et al.

1. Where exceptions of fact are filed to a master's or auditor's report, such exceptions are the only issues of fact to be submitted to the jury, so far as the matters referred are concerned; and when so submitted, the jury shall return a verdict on each exception *seriatim*. A general finding for one of the parties is invalid.

2. Where the property of a corporation under mortgage was levied on under various other claims, and the company prepared to arrest the sale by affidavits of illegality, but an agreement was effected by the company and creditors represented, under which the objection was to be withdrawn, the equity of redemption of the property to be sold and bid in for the creditors, at a stated price, no money was to be paid except the costs, and the company was to have a specified time in which to redeem the property, or on failure to do so, the creditors were to be interested in it in proportion to their claims, and the sheriff assented to this arrangement, and the property was bought by the agreed bidder for the creditors, this did not give other creditors the right to seek redress directly from the bidder at the sale, by bill in equity, for the purpose of compelling him to pay the amount of the bid, especially where the complainants had postponed all action for more than two years, where the sheriff had gone out of office, and where the other property of the defendant had, in the meantime, been sold and otherwise disposed of.

(a.) If a purchaser at a sheriff's sale fails or refuses to comply with his bid, and the sheriff desires to relieve himself of liability, or to transfer it to the bidder, he should request the latter to comply with the terms of sale, and upon his failure or refusal to do so, the sheriff may institute a suit against him in his own name, for the use of the parties in interest, for the full amount of the bids; or he may re-sell the property and proceed against him for the deficiency arising from such re-sale. But a court of equity will not entertain jurisdiction to compel a specific performance by the purchaser at the sale, at the instance of creditors who claim an interest in the proceeds thereof.

(b) The present bill is in the nature of a bill for specific performance.

(c.) If the complaining creditors could take the sheriff's place and proceed directly against the bidder, the same defences would be open to the latter as he would have against the sheriff. It is the failure to comply with the terms that gives the right of action, and any material deviation from those terms upon the part of the sheriff would defeat his recovery. If the bidder complied with the terms of the sale, the sheriff would have no cause of action.

(d.) If the sheriff knew that the bidder purchased as the agent of

others, and recognized and treated with him as such, his right of action would not be against the agent, but against the principal.

(*e.*) If the sheriff was derelict in his duty, and exceeded his authority in becoming a party to the agreement, and thereby became liable to the complaining creditors, the remedy was by rule or suit against him personally, or on his official bond, and not by bill in equity against the purchaser.

(*f.*) The complainants exhibited *laches* and want of vigilance in this case.

3. If there was any agreement to pay in full creditors who did not enter into the agreement, the present case was not founded thereon, and no recovery could be had on that ground.

May 13, 1884.

Master in Chancery. Auditor. Practice in Superior Court. Sheriff. Actions. Equity. Contracts. Before Judge FAIN. Dade Superior Court. March Term, 1883.

Reported in the decision.

E. D. DODSON; DABNEY & FOUCHE, for plaintiff in error.

E. D. GRAHAM; McCUTCHEN & SHUMATE, for defendants.

HALL, Justice.

All the property of the Rising Fawn Iron Company was subject to two mortgages, designated as first and second mortgages, and each for the sum of one hundred and seventy-five thousand dollars. All the bonds, to secure which the first mortgage was given, had been negotiated, but what portion of those the second mortgage had been made to secure had been disposed of, is somewhat uncertain, though it is quite evident that a part of them had been put into circulation, and so this latter mortgage as to them became operative. After this time, the company incurred large indebtedness on various accounts to others, among whom were laborers, material men, artisans, mechanics, and others claiming liens. These various claims, amounting in the aggregate to between $16,000 and $18,000, had been reduced to judgment, and executions had issued thereon.

Some of them had been levied upon the personal property of the company, and also upon its real estate. The personal property, when sold, was bid in and taken possession of by John G. Hale, who held the same for the benefit of the parties interested therein, and in pursuance of an understanding and agreement among themselves. When the real estate was offered for sale by the sheriff, the company, to arrest it, prepared, and was about to tender, affidavits of illegality. By an agreement with the opposite parties, or such of them as were then represented (the company believing that they were all represented), it was arranged so that the affidavits of illegality should not be presented, and that the equity of redemption in and to the property levied on should then be sold, but upon the express condition that it should be bid in by the execution creditors at the sum of $18,000 ; that no money should be paid on this bid, except enough to satisfy court costs and the cost of making and conducting the sale; that the company should have thirty and sixty days within which to redeem it; that, for the sake of convenience, the defendant, Cureton, should bid for and take title to it as agent for the parties interested, and should, in that capacity, be let into possession; and, in the event that the company failed to redeem within the time agreed on, each of the creditors, in proportion to the amount of his claim, should become interested in the property thus bid off. Cureton assumed no individual liability on account of his connection with the transaction. This agreement was perfectly understood and acquiesced in by the sheriff, and before the sale was made, its terms were announced, and the transaction was consummated upon those terms, and none others. The property was conveyed to and held by Cureton in pursuance of this undertaking. The sale was made on the 6th day of November, 1876. The company did not redeem, as they had the privilege of doing. A portion of the parties for whose benefit the property was purchased formed themselves into a new company, appointed trustees to

manage its affairs, and Cureton, as their agent, had the principal direction of its operations. He raised considerable sums of money, upon his personal credit, to keep down the interest on the bonds the mortgages were given to secure, and with this and the income from the furnace and lands, he paid up the interest for a short time, and employed the machinery and other property committed to his charge; but eventually failing to meet the payments of interest and other expenses of operating the furnace, the holders of the mortgage, upon a breach of its condition, instituted proceedings in the circuit court of the United States for the northern district of Georgia to foreclose the same; pending the suit, that court appointed a receiver, who took charge of the property.

On the 15th day of February, 1878, the complainants filed their bill in Dade superior court against "The Company," and against Cureton and others, in which they set forth the sales to Hale and to Cureton, that, after the purchase by the latter, he got possession of the property which had been controlled by Hale. They alleged that Cureton purchased for himself and such of the execution creditors as might choose to become interested with him in the purchase, and that the sheriff, upon Cureton's promise to indemnify him against the claims of others, conveyed the property to him without the payment of any money; that nothing but the equity of redemption was sold, and it brought its full value; that the liens upon which the executions making the sale issued were younger than the mortgages. They showed that all the effects of the company had been exhausted when the bill was filed, and that, unless the fund arising from the sale was brought into court and distributed among the creditors according to their legal priorities, they were without remedy for the collection of their respective debts; that the sheriff, who made the sale, had gone out of office without taking steps to enforce the bid, and the then present sheriff refused to do so. This bill was answered by Cureton alone, and his

answer fully set forth the circumstances and capacity in which he purchased, and held the equity of redemption in and to the premises in dispute, together with the personal outlays made by him in carrying out his trust.

The issues, both of law and fact, were referred to an auditor, who reported thereon. Upon the filing of the report, Cureton excepted thereto, and assigned by his exceptions numerous errors both of law and fact. All these exceptions except four were disposed of by the court, and these four were united and submitted to the jury, whose finding sustained the whole of the auditor's report, except as to the claims of Alexander Jordan, Meador Brothers and Laramore, which they found against; they also found in favor of J. W. Blevins's claim, less $125.00, which they directed to be credited on it. The auditor's report found that the claims of the above named parties, together with those of Burkhalter, Marston & Company, the Lookout Water Company, Newhouse, Rosenan & Company, Tows & Hartman, R. S. Coleman, H. D. Austen and Ogden Brothers, should be paid by defendant, Cureton. Meador Brothers and Jordan moved for a new trial, which was granted by the court, to which Cureton excepted. Cureton also moved for a new trial, upon numerous grounds, which was overruled and refused by the court, and he excepted to this judgment. The auditor found against the claims of all the original complainants in the bill. When those in whose favor he found became parties does not distinctly appear, nor, in the view we take of the case, is it important that it should. On account of the legal defects in the proceedings to enforce their liens, the auditor rejected the claims of a very large number of laborers and workmen, who were parties to the arrangement under which the property was sold, and who claimed an interest under that agreement in the property conveyed to and held by Cureton.

It is only necessary to pass upon a few of the very many

questions made by this complicated record, in order to dispose of this case.

1. The Code, §4203, in express terms requires that, when exceptions to a master's or auditor's report are filed, these exceptions shall be the only issues submitted to the jury, so far as the matters referred are concerned, and when so submitted, the jury shall return a verdict on each exception *seriatim.* At this term of the court, we held, in *Poullain vs. Poullain*, that a general finding under such circumstances was not in conformity, but was repugnant, to this requirement, and was therefore invalid. This has been frequently ruled before. The verdict does not dispose of the issues submitted, and amounts to nothing. This whole trial would have to be set aside upon this ground, and we might dispose of the case by determining this question alone, but such a course would leave open other points made upon the record, which are decisive of the matter in litigation upon their merits.

2. It is manifest that this transaction was treated as though Cureton was a purchaser at a regular sheriff's sale, and so considering it, both the auditor and the court held him directly responsible in equity to the execution creditors, who had their claims in the hands of the sheriff at the sale, for the amount of his bid. Conceding that the complainants were not present or represented at the sale, and that they were no parties to the agreement by which the defendant company withdrew its objections to the making of the sale, in the form of affidavits of illegality, which it had made out and was about to tender to the sheriff, and were not bound by it, and that the sheriff could not, by assenting to such an arrangement between the creditors present and represented and the defendant, relieve Cureton from his liability to comply with the bid made,—does this give the complainants a right to go directly upon him in equity and make him responsible, as though he stood in the sheriff's shoes, because the sheriff had failed to institute proceedings to make him accountable, especially

where these complainants had postponed all action in the matter for more than two years, when the sheriff was out of office, and when other property of the defendant had, in the meantime, been sold and otherwise disposed of? No precedent for such a proceeding has been found, and we know of no principle upon which it could be sustained. In the expressive language of Lord Coke, "It is a mere stranger in the law."

The sheriff, while a nominal, is no substantial party to this cause; at least as to him no relief was decreed, and his liability is not therefore made a question, except in so far as it may be necessary through him to fix responsibility on the bidder. If he would relieve himself of liability and put it on the bidder, he must have pursued the course pointed out by the law. Two courses were open to him: he should have requested the bidder to comply with the terms of sale, and upon his failure or refusal so to do, then he might have instituted a suit against him, in his own name, for the use of the complainants, for the full amount of the money bid; or he might have re-sold the property, and proceeded against him for the deficiency arising from such re-sale. Code, §§3655, 3656. In *Orr vs. Brown*, 5 *Ga.*, 400, this court held that, where the purchaser at sheriff's sale refused to comply with the terms of the sale, and the same was re-sold for less money, a court of equity will not entertain jurisdiction to compel a specific performance by the purchaser at the sale, at the instance of the defendant in execution, but will leave him to his remedy provided by the act. And if not at the instance of the defendant in execution, why at the instance of the plaintiff, since each of them has precisely the same right under the statute? Code, §3656. This, though not *eo nomine* a bill for specific performance, is, in effect, its exact equivalent, since its only purpose is to make the bidder take the land and pay the purchase money to the plaintiffs in execution.

But placing the complainants in the sheriff's place, the same defences would be open to the bidder that he would

have against the sheriff. It is the failure to comply with the terms that gives the right of action, and any material deviations from those terms, upon the part of the sheriff, would defeat his recovery. *Hendrick vs. Davis, sheriff,* 27 *Ga.*, 167, 170, 171. By the terms of sale, the purchaser was to pay no money beyond the costs; he was to hold the property subject to the defendant's right to redeem in a specified time, and in case of the defendant's failure to redeem, then he was to hold upon certain stipulated conditions for the uses named. With these terms he seems to have complied, and upon this principle the sheriff could have maintained no suit against him. Besides, the sheriff knew that he purchased as the agent of others, and as such he recognized and treated with him; if, therefore, he had any right of action, it was not against him, but against his principals. Code, §2211; 62 *Ga.*, 753.

If the sheriff was derelict in his duty, and exceeded his authority in becoming a party to this agreement, and thereby became liable to complainants, he was certainly not liable in this mode of procedure. The remedy was by rule or suit against him personally, or upon his official bond. With the defence he might have set up to such a suit, we have no immediate concern; it is enough for present purposes that Cureton's liability was consequent upon his; if it should turn out that he was not liable, then Cureton was discharged, and if he was liable, then Cureton's obligation to respond to him depended upon other considerations growing out of the relations existing between them.

In this connection, it may not be out of place to remark upon the long delay of these complainants in instituting proceedings to call to account both the sheriff and Cureton. They cannot satisfactorily excuse the delay by pleading ignorance of the circumstances under which their supposed rights against these parties accrued; they certainly had knowledge of facts sufficient to put them upon inquiry, and had they exercised ordinary vigilance in pursuing the inquiry, they would have ascertained how matters stood

before others acted upon their newly acquired rights, and expended both labor and money upon them. It would be no great stretch of principle to construe their inaction into acquiesence and ratification of the agreement, in pursuance of which the sale was made, or if not this, then upon principles of equity and justice, they may be estopped from disturbing it.

3. They were at liberty to come in at any time and participate in the property purchased by accepting the terms of the sale. Upon reflection, they did not see proper to do so; they preferred to look to the amount of the bid without incurring any of the risks consequent upon the employment of the property. They seem anxious to have had the benefits of the venture without assuming any of its burdens; they contend that it was a part of the agreement that such of the creditors as did not enter into the arrangement were to be paid in full by those who did. The evidence to this effect is inferential rather than direct; some, and the principal, of these parties for whom the property was purchased deny that they ever knew of or agreed to such a condition; but be this as it may, this suit is not founded upon any such claims, but upon one in all respects its opposite, and no relief can be decreed them upon that ground, under this bill as now framed.

This motion for a new trial was made upon the following, among other grounds:

Because the court, at the hearing of the cause, refused, upon motion of defendant, Cureton, to dismiss the bill, because no case was thereby made against any of the parties defendant thereto.

Because the court refused to charge as requested in writing by defendant, "that complainants stood in the shoes of the sheriff who sold the property, and the defendant was entitled to the same defence against them that he would be entitled to against the sheriff; that they can recover, if at all, only on the contract under which defendant purchased at the sheriff's sale; that if the sheriff sold

the property under a consent agreement between the parties, which varied the terms of sheriff's sales as prescribed by law, then it was not a sheriff's sale; that if the defendant, Cureton, is liable to complainants, his liability arises upon the contract of purchase at the sale, and if it is sought to make him liable on the contract, it cannot be severed and enforced in part, but must be enforced as a whole." Other grounds of the motion except to charges of the court contravening and qualifying these requests. In addition to these, there are the usual grounds that the verdict of the jury is contrary to law and equity, and against the principles of equity and justice.

The motion to dismiss this bill at the hearing, we are inclined to think, should have been granted; but if that was not done, then the charges requested by the defendant should have been given; they were pertinent and legal, and those complained of as given by the court, in so far as they contravened or essentially modified the others, should have been withheld. If we are right in what we have determined, the verdict, in all the particulars we have pointed out, is certainly contrary to law and equity and is opposed to the principles of equity and justice. This dispenses with the necessity of considering other questions made by this motion for a new trial, as well as those made by the bill of exceptions, in so far, at least, as they relate to the grant of new trials to Jordan and to Meador Brothers.

Judgment reversed.