SMITH *v.* ROBERTS, receiver, *et al.*

When a bid for the purchase of property in the hands of a receiver, which has been ordered to be sold, has been submitted to and duly accepted by the court, the bidder is liable for the difference between the amount

which he bid and that which the property brings at a proper resale ordered by the court to be made at his risk.  But, in order to render him so liable, it must appear that the same property for which he bid was actually resold; and unless it so appears, a proceeding to establish such liability can not be maintained.  It is not sufficient, to fix liability upon the bidder, to show that some of the property was sold under order of the court, and other items, on which liens existed, were surrendered to the holders of the liens and sold by them at private sale, when, according to the terms of the bid, the purchase was conditioned on the extinguishment of the liens so as to vest full and unencumbered title to the property in the purchaser, and when it also appears that 'the bid was made for various items of property as a whole, constituting a manufacturing plant or outfit, and as such, with the conditions, it was accepted by the court.

Argued November 17, 1898. — Decided February 3, 1899.

Intervention.    Before  Judge  Hansell.    Lowndes  superior court.    April 29, 1898.

From the petition of Lowe and other creditors of the Mineola Lumber Company, who asked leave to intervene in the name of the receiver who had been appointed in the main case, the following appeared: On February 29, 1896, James M. Smith, of Oglethorpe county, filed with the receiver a bid for the purchase of the company's property which was then in the custody of the receiver, and on March 2, 1896, the judge passed an order accepting the bid; but Smith refused to accept the property and pay the amount of the bid.  On April 4, 1896, the judge passed an order that the receiver be authorized to receive new bids for the property until the first Tuesday in May, 1896, and report all bids received to the court for approval or rejection as the court might determine, and that the receiver notify Smith that he would be held responsible for any deficiency and difference between such new bid and the bid made by him and accepted by the court.  The receiver then advertised that under this order he would receive bids for the purchase of the property until the first Tuesday in May, 1896, and on April 20, 1896, Smith was served personally by the sheriff of Oglethorpe county with a notice directed to him by the receiver, to the effect that the property would be sold at his risk, the notice having attached to it a copy of the judge's order, and of the advertisement for bids.  In pursuance of an order subsequently passed by the court, the receiver, after advertise-

ment of the time and place of the sale, exposed for sale at public outcry, on the first Tuesday in April, 1897, before the court-house door of Lowndes county, the mill plant of the defendant, and all other property belonging to it, except certain property reserved in the judge's order, and sold the same to one West, for $9,505, that being the highest amount bid. The property excepted from the sale consisted of certain steel rails known as "wall rail," one locomotive engine, and one iron safe. A report of this sale was made to the court by the receiver; and the court, on April 7, 1897, passed an order directing Smith to show cause before the judge on April 14, 1897, why the sale of the property to West should not be confirmed, and why the court should not allow proceedings against him for the difference between his bid and that of West, and interest thereon. A copy of this order was, on April 14, 1897, served personally on Smith by the sheriff of Oglethorpe county. Upon the motion of Smith, the hearing upon the receiver's report was continued until April 19, 1897. Upon that day the judge passed an order confirming the sale to West, and directing that the Mineola Lumber Company, or any creditor or stockholder of the company, be allowed to proceed against Smith in the name of the receiver, by amendment to the original proceeding or by intervention, prior to or during the next term of the court, for the purpose of recovering against him the difference between the amount of his bid and that of West, and interest thereon, and the cost and expenses of such proceeding, less the value of the property not included in the sale to West. The order recited that at the hearing on April 19, 1897, the attorneys for the receiver tendered to Smith the property included in his bid, and requested him to comply with his bid and receive the property, the receiver tendering him not only that covered by the bid of West, but the other property not covered by West's bid, to wit, the "wall rail," one locomotive engine, and one iron safe, and that he refused to accept it and comply with his bid.

The present petition was filed on April 27, 1897. It alleged that Smith, by filing his bid with the receiver on February 29, 1896, voluntarily made himself a party to the main case then pending in the superior court of Lowndes county, and subject

to the jurisdiction of that court so far as to authorize the court to give judgment against him if he refused to pay the amount of his bid, or any deficiency between his bid and the amount realized at the resale of the property, together with all expenses of the resale, the interest on the amount of his bid from the date of the bid up to the day of the resale, and all costs and attorney's fees incurred in enforcing the collection of the amount bid by him; that at the time of the filing of his bid, and at the time of the order accepting it, as well as at the date specified in that order, he was able to pay the price he had bid for the property, and his failure to pay it was not owing to any alleged defect in the title to the property, nor any other alleged cause which would in law, equity, or good conscience, justify him in refusing to comply with the terms of his bid; that the amount of his unconditional bid, $25,000, should be reduced by the amount due on the "wall iron," $1,423.20, the engine, $1,600, and the iron safe, $150, the titles to which had been legally reserved in the sellers, and which articles were not included in the sale to West, and then increased by the number of acres of timber at $1 per acre secured by the receiver under the bid made by Smith and accepted by the court, to wit, in the sum of from $1,500 to $2,000, or from 1,500 to 2,000 acres of timber secured by the receiver under said bid and order of acceptance, making a total to be accounted for by Smith of from $23,326.80 to $23,826.80, with interest on $5,000 from March 12, 1896, to April 19, 1897, and interest on from $18,-326.80 to $18,826.80 from March 22, 1896, to April 19, 1897, and interest on from $13,821.80 to $14,321.80 from April 19, 1897, until paid, together with the cost and expenses of the resale of said property, to wit, $500 or other large sum, and the cost, expenses, and attorney's fees for this intervention, for all of which sums and charges the said Smith is liable to the receiver; and, waiving discovery, the petitioners prayed that the receiver recover the same from Smith; also for general relief.

Smith's bid was as follows: "I hereby bid for the property of the Mineola Lumber Company as follows: I will pay $30,-000 for the sawmill, planing-mill, engines, boilers, locomotives, tramroads, railroad-iron, and all fixtures, furniture, and uten-

sils and appurtenances, and all other property of any kind, character, and description, owned by the Mineola Lumber Company on the 13th day of December, 1895, and all rights owned by said company for rights of way for tramroads, whatever said rights of way be, and all timber leases owned and controlled by said company on said 13th day of December, 1895, and all rights, privileges, and immunities of said company in and to said leases. In other words, I am to be subrogated to all the rights, privileges, and immunities of said company in and to the leases on said lumber, whatever these may be. All property to which said company may have an equitable title, but the legal title being in some other person or corporation, to secure any debt or purchase-money, or any part thereof, is included in the property above referred to, with the understanding that the court is to provide for a payment or discharge of the debts for which the title on said property is held, in its order authorizing a sale. Of said purchase-money I will pay $25,000 in cash, and the other $5,000 I agree to pay when the receivers of said company procure for me leases on 10,000 acres of timber, for which I am to pay in cash, at the time of the making of the various leases, one dollar per acre, and said sums to be paid for the said leases to be procured as aforesaid, to be in addition to the said $30,000 which is bid for the property owned by said company on December 13, 1895. I agree that said receivers shall have twelve months from this date in which to procure said leases, provided enough timber is furnished to operate said mill during said twelve months. I agree that at any time from the date of the acceptance of this bid by the court that I will accept from the receivers leases or timber for any number of acres, and pay the purchase-price of the same at the rate of one dollar per acre; and I further agree that if I purchase any timber within the territory hereinafter described, from which said receivers shall procure said leases aforesaid, within the time prescribed for procuring the same, that whatever timber I purchase shall as aforesaid shall be credited to said company or its receivers at once. At any time after lease to said 10,000 acres are procured, then I am to immediately pay the said $5,000 balance of purchase-price of said

mill property owned by said company on December 13, 1895. In the event of the failure of said receiver to procure all of said leases on 10,000 acres of timber, then I agree to extend the time to eighteen months, provided, however, that enough timber shall be furnished to operate the mill for the extended time.     But in no event shall the receiver be required to furnish an amount exceeding in all 10,000 acres.     The leases on said 10,000 acres are to be procured in the following territory: On 48 lots of land in the 12th district of Brooks county, Ga., in the following boundaries:     Commencing at lot No. 220 and running north to lot No. 227, and from lot No. 227 west to lot No. 326, and from 326 south to 333, and from 333 east to 220, said sections containing the lots mentioned also being included and covered by said territory, and said territory to be varied as the necessities of the case may demand, to prevent an extortionate or too great and unreasonable a price on the timber within herein mentioned."

The order of the court accepting this bid was as follows: "Upon consideration of bids to-day, the foregoing bid of James M. Smith is accepted in all its terms, and he is allowed ten days in which to pay $5,000 of the purchase-money, and ten days longer in which to pay $20,000, and it is ordered that John T. Roberts be appointed permanent receiver, and that he be fully authorized to execute all proper conveyances for all of said property to said James M. Smith upon his complying with the terms of his bid, and that the title pass to said Smith free from all encumbrances, legal or equitable, but they are to attach to the purchase-money in the hands of the receiver and paid under order of court; in cases where title was reserved or held by vendors of any part or parts of the property sold, and the whole of the purchase-money has not been paid, the balance due of said purchase-money is to be paid from the general fund coming into the hands of the receiver under this sale."

The material grounds of the motion to dismiss the petition appear in the opinion.

*John L. Hopkins & Sons* and *David W. Meadow,* for plaintiff in error.     *Denmark & Ashley* and *S. T. Kingsbery,* contra.

LITTLE, J. There are several assignments of error made to the ruling of the court refusing to dismiss the petition. From the view which we take of the case, it is only necessary to refer to two questions presented by the motion to dismiss. It is a general proposition, well recognized in equity pleading and practice, that one who submits a bid for property offered for sale by a receiver under order of the court, brings himself within the jurisdiction of the court for the purpose of having the sale completed; and to this end the court may by rule or attachment compel the bidder to perform his part of the contract, and either pay the amount of his bid and take the property, or make good the difference between his bid and the amount realized at a subsequent sale of the same property. But the plaintiff in error avers that he was a resident of the county of Oglethorpe and was not at the time the petition was filed, nor now, a resident of Lowndes county where the proceedings were pending, and that the superior court of Oglethorpe county alone has jurisdiction of him for the trial of the matters alleged against him in the petition, and that the constitution of this State, in par. 6, sec. 16 of art. 6, fixes the venue of such a suit against him in the county of Oglethorpe where he resides. We do not find it necessary, however, to discuss or decide the question of jurisdiction raised in this case, because on its merits, as shown by the petition, the case must be adjudged against the defendants in error. Assuming that the superior court of Lowndes county had acquired jurisdiction of plaintiff in error, for the purpose of compelling him to pay the difference between the amount of his bid and that which the property brought at a resale, it only becomes material to pass on the question raised in the fifth ground of the motion to dismiss. That is, it does not appear from the petition or the record in the case that the property sold on the first Tuesday in April, 1897, was the same and the whole of the property bid for by the plaintiff in error. In express terms, the written bid alleged to have been made by Smith was for the purchase of "the sawmill, planing-mill, engines, boilers, locomotives, tramroads, railroad-iron, and all fixtures, furniture, and utensils and appurtenances, and all other property of any kind, character, and description, owned by the

Mineola Lumber Company on the 13th day of December, 1895."
This bid specifically included not only all the property which
the company owned at that time, but to which they had an
equitable title, where the legal title was in some other person
to secure a debt or there was a lien for purchase-money. And
the bid was made with the understanding, as expressed in
the writing, that the court was to provide for the payment or
discharge of the debts for which the title was so held, by
proper order. Evidently the purchaser did not propose to buy
any single interest of the Mineola Company, nor any particular
item of property. A fair construction of his bid manifests that
his purpose was to purchase the entire property as an outfit or
plant—not only those items which the company held abso-
lutely, but other particular and necessary pieces of property
where the legal title was in the original vendor or a lien ex-
isted for the payment of some particular sum. This, in effect,
was his bid, and with these terms and conditions it was ac-
cepted by the court.

It is contended that when this bid was submitted and ac-
cepted by the court, a valid sale was completed, under the terms
of which the receiver was entitled to have the purchase-money,
on tender of the property according to the terms of the bid.
Assuming the bid to have been made, such a conclusion must
follow. The compilers of the American and English Encyclo-
pædia of Law, in vol. 12, p. 234, have, from authorities cited
in notes 1 and 2, condensed the rules which are applicable to
the question under consideration, in the following language:
"Where the sale is made under a decree in chancery, the power
of the court to enforce the contract of purchase is broader than
in case of an ordinary execution sale. In addition to an action
at law to recover the amount bid, or the deficiency upon a re-
sale, the court of chancery may, upon motion, or proper appli-
cation, (1) set aside the sale, release the purchaser, and decree
a resale; or (2) ratify the sale and decree a specific performance
of the contract, enforcing its order by attachment and commit-
ment of the person of the purchaser for contempt; or (3) order
a resale, holding the purchaser liable for any deficiency, and
for the costs of the resale." See also, Jones on Mortgages,

§ 1642; 2 Dan. Ch. Pl. & Pr. 1281, 1282.    In the case at bar the proceeding was instituted under the third of these rules, that is, ordering the property resold with the express purpose to hold Smith liable for the deficiency and the costs of the second sale.    In order to do so, it is essential that the same property and all of it should be resold; otherwise it would be impossible to ascertain the deficiency, so as to fix the amount for which the bidder at the first sale is to be held responsible.    It must be noted that no element of uncertainty can be allowed to enter in establishing this liability.    The first purchaser is liable for a fixed, definite amount, to be ascertained by subtracting, from the purchase-price which he contracted to pay, the amount realized at the second sale of the same property, or he is liable for nothing.    The difference measures the liability. Without stopping to ascertain the rules which govern the manner of the second sale, in relation to the liability of the first purchaser, further than to say that the mode, manner, and terms are left to the sound discretion of the chancellor in the accomplishment of the purpose to obtain the best price at the second sale for the protection of the original purchaser, we refer to certain established principles which must be considered in determining, in a proceeding of this character, the liability which attaches to the first purchaser who is able, but refuses, to comply with the terms of his purchase.    The summary process exercised by courts of equity, to compel a purchaser to complete his bid, is cumulative of the remedy to recover the amount in an action at law, not exclusive.    Townshend v. Simon, 38 N. J. L. 239; Shinn v. Roberts, 43 Am. Dec. 636; Municipality v. Hennan, 14 La. An. 559; 17 La. An. 52.    The resale must be made upon the same terms, as near as may be, in order to render the first purchaser liable for the difference.    Shinn v. Roberts, supra; Riggs v. Pursell, 74 N. Y. 370.    If the terms of the sale differed materially, it is proper to restrain plaintiffs from collecting the difference.    Our statute law, Civil Code, § 5466, in dealing with liability of the purchaser at a sale of real or personal property, when made by an executor, administrator, etc., or by a sheriff under legal process, declares, that the trustee or officer making the sale may either proceed

27

against the purchaser for the full amount of the purchase-money or resell the property and proceed against the first purchaser for the deficiency; and in construing this provision of the law, this court has made repeated rulings on the question as to what defenses may be urged by such purchaser in a suit to recover the deficiency.

The applicability of the principles ruled may be questioned when sought to be followed in a court of equity. It may be answered, however, that equity is ancillary, not antagonistic to the law; that it follows the law where the rule of law is applicable, and the analogy of the law where no rule is directly applicable. Civil Code, § 3928. We are not now dealing with the powers of a court of equity to enforce its orders, nor attempting to limit the practice incident to such courts to enforce its decrees or adjudications by rule or attachment; but the principles which govern the liability of a purchaser of property, for a deficiency in price on a resale, must be the same whether it arises in a suit at law under a sale made under legal process issued by a court of competent jurisdiction, or the sale be had under an order of the same court, by a receiver, in the exercise of its chancery powers, and the proceeding is in the nature of a petition for attachment. The incidents are different, but the rules of law which afford a defense, when resting on similar facts, must be the same in both jurisdictions. In the case of *Hendrick* v. *Davis*, 27 *Ga.* 171, which was a suit to recover the difference between the amount originally bid and that which the property brought at a resale by the sheriff, the court ruled: "For Hendrick to be liable, *the same property must have been resold*, and resold as the property of the identical defendants as whose property it had been bid off by him." In the case of *Saunders* v. *Bell*, 56 *Ga.* 442, which was an administrator's sale, it was ruled that a nonsuit was proper where the resale was delayed twelve months. See also *Cureton* v. *Wright*, 73 *Ga.* 8. As we have seen, the bid of Smith was made for the property as a whole, and in a certain condition relatively to its situation as it existed at a particular time, December 13, 1895. In order to hold Smith liable for the difference between his bid and the amount realized at a resale, it is a condition precedent

that a resale of the property for which he bid and as he bid—
that is to say, as to extinguishment of liens on the property—
should be made. Confessedly, this was not done. The rails
upon which there existed a lien were taken up and turned over
to a bank which held the lien. One of the locomotives was
similarly disposed of; and so was the iron safe. It is true the
petition alleges that he is entitled to a credit for the prices at
which these items of property sold, less the amount necessary
to extinguish the liens on them; but he bid for this property
in a certain condition, free of all liens, and as parts of a whole
plant, and made his bid on the condition that he should have
the property divested of liens; and, in order to hold him good
for the difference, the same property must have been sold with
the same conditions as to title. While the receiver might have
pursued one of the other remedies which the law gives him,—
for instance, he might have, without a resale, tendered the
property to Smith according to his bid and demanded the pur-
chase-money, and, on his refusal to comply, instituted an ac-
tion to recover the amount bid,—yet, when he, or the inter-
venors proceeding in his name, selects another remedy which
the law allows—that of holding the purchaser for the differ-
ence between the bid and the amount realized at a resale,—it
is essential, before recovery, either in law or in equity, that a
resale of the property as originally purchased must be alleged
and proved. This not having been done, as shown by the pe-
tition, the proceeding should have been dismissed; and the
judgment overruling the motion to dismiss is

<em>Reversed. All the Justices concurring.</em>